**<u>Exhibit B</u>**

**(Bidding Procedures Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re

Quantason, LLC

        Debtor.

-------------------------------------------------------------x

:  Chapter 11
:
:  Case No. 14-_____ (____)
:
:
:
:

**ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion") [1] of the above-captioned debtor and debtor in possession (the "Debtor") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") (I)(A) approving procedures in connection with the sale of substantially all of the Debtor's assets; (B) scheduling the related auction and hearing to consider approval of sale; (C) approving procedures related to the assumption of certain executory contracts and unexpired leases; (D) approving the form and manner of notice thereof; and (E) granting related relief; and (II)(A) authorizing the sale of substantially all of the Debtor's assets pursuant to the successful

---

[1]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

bidder's asset purchase agreement free and clear of liens, claims, encumbrances, and other interests; (B) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and (C) granting related relief; the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient cause having been shown;

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A.      The Debtor's proposed notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve the sale of the Debtor's Assets (the "Sale Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B.      The Bidding Procedures substantially in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Order.

3.      The Bidding Procedures attached hereto as Exhibit 1 are APPROVED.

4.      The Bid Deadline shall be June 2, 2014 at 9:00 a.m. (prevailing Eastern Time).

5.      The Debtor shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify Qualified Bidders whether their bids have been recognized as such as promptly as practicable after a Qualified Bidder delivers all of the materials required by the Bidding Procedures.

6.      The Auction, if necessary, shall be held on June 9, 2014 at 10:00 a.m. (Pacific) at the offices of DLA Piper LLP (US), 550 South Hope Street, Suite 2300, Los Angeles, California 90071, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

7.      At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed.

8.      The Debtor shall determine which offer is the highest and otherwise best offer for the Purchased Assets.

9.      The Sale Hearing shall be held on June [  ], 2014 at ____:00 a.m. (prevailing Eastern Time) before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, [ ]th Floor, Courtroom [  ]. Any objections to the Sale shall be filed and served so as to be received no later not later than June [  ], 2014 at 4:00

p.m. (prevailing Eastern Time) by: (i) counsel to the Debtor: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Kim Newmarch, Esq. (kim.newmarch@dlapiper.com)) and (ii) the Office of the United States Trustee: US Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Fax: 302-573-6497) (Attn: Mark Kenney, Esq.) (mark.kenney@usdoj.gov) (collectively, the Notice Parties).

10.     The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtor, shall have the exclusive right, in the exercise of its fiduciary obligations and business judgment, to cancel the Sale at any time subject to the terms of this Order.

11.     The following forms of notice are approved:   (a) Notice of Sale Procedures, Auction Date and Sale Hearing, in the form substantially similar to that attached hereto as Exhibit 4 (the "Procedures Notice") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached hereto as Exhibit 5.

12.     The Debtor shall, within two (2) business days after the entry of this Order, serve this Order by first class mail, postage prepaid on (a) the US Trustee, (b) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002 and (c) all Potential Bidders.

13.     The Debtor shall serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts or their counsel (if known), by no later than [May 19, 2014]. The Cure Notice shall state the date, time and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtor believes

are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts").

14.    If any counterparty to an Assumed Executory Contract objects for any reason to the assumption and assignment of an Assumed Executory Contract (an "Assumption Objection"), such counterparty must file and serve such Assumption Objection so as to be received by the Notice Parties by no later than (the "Assumption Objection Deadline"): (i) 4:00 p.m. (prevailing Eastern Time) on [June 2, 2014], provided, however, that any counterparty may file and serve an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Assumed Executory Contract up to the time of the Sale Hearing, or raise it at the Sale Hearing; or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale Hearing).  The Court will make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

15.    If a Contract or Lease is assumed and assigned pursuant to Court order, then except for Disputed Cure Amounts (as defined herein), the Assumed Executory Contract counterparty shall receive no later than three (3) business days following the closing of the Sale, the Cure Amount, if any, as set forth in the Cure Notice.  To the extent the Assumed Executory Contract counterparty wishes to object to the Cure Amount, if any, set forth in the Cure Notice, its Assumption Objection must set forth with specificity each and every asserted default in any executory contract or unexpired lease and the monetary cure amount asserted by such

counterparty to the extent it differs from the amount, if any, specified by the Debtor in the Cure Notice.

16.     In the event that the Debtor and the non-debtor party cannot resolve the Cure Amount, the Debtor shall segregate any disputed Cure Amounts ("Disputed Cure Amounts") pending the resolution of any such disputes by the Court or mutual agreement of the parties. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.  Any counterparty to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice.

17.     Except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

18.     Upon Closing of the Sale, the proceeds of the Sale shall be paid by the Successful Bidder to the Debtor.

19.     To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

20.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

21.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.


Dated: _____, 2014
       Wilmington, Delaware

                                    _____
                                    United States Bankruptcy Judge

# Exhibit 1

**(Bidding Procedures)**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of substantially all assets (the "Purchased Assets") of the Debtor , in connection with the chapter 11 case pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), case number [14-_____ (____)].

In order to move the sale process along as quickly and efficiently as possible, the Debtor has drafted a purchase agreement (together with the schedules and related documents thereto,[1] the "Purchase Agreement"), pursuant to which the Purchased Assets will be sold to the Successful Bidder (defined below).  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Purchase Agreement.

## I.      ASSETS TO BE SOLD

The Debtor seeks to complete a sale of all or substantially all of the Purchased Assets (the "Sale").

## II.     THE BID PROCEDURES

In order to ensure that the Debtor receives the maximum value for the Purchased Assets, it intends to hold a sale process for the Purchased Assets pursuant to the procedures and on the timeline proposed herein

### A.      Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

(i)     a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid; and

(ii)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtor to a Potential Bidder) in form and substance satisfactory to the Debtor, which shall inure to the benefit of any purchaser of the Purchased Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Debtor determines in its reasonable business judgment, after consultation with its advisors, is likely (based on availability of financing, experience and other considerations) to be able to

---

[1]     Certain of the schedules and related documents have not been filed with this motion, but will be finalized by the Debtor and filed no later than five (5) business days after entry of the order approving these Bidding Procedures.

consummate the sale, will be deemed a "Qualified Bidder." The Debtor will limit access to due diligence to those parties it believes, in the exercise of its reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Debtor will determine and will notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

### B.   Due Diligence

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor, in consultation with its advisors, deems appropriate, in its reasonable discretion. The due diligence period shall extend through and include the Bid Deadline (as defined below). Additional due diligence will not be provided after the Bid Deadline.

### C.   Provisions Governing Qualified Bids

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

a) it states that the applicable Qualified Bidder offers to purchase, in cash, the Purchased Assets;

b) it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder (defined below), provided that if such bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, and (ii) the date that is fifteen (15) business days after entry of the Sale Order with respect to the Successful Bidder and sixteen (16) business days after entry of the Sale Order with respect to the Back-Up Bidder;

c) confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

d) it includes a duly authorized and executed copy of a Purchase Agreement, including the purchase price for the Purchased Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, together with copies marked ("Marked Agreement") to show any amendments and modifications to the draft of the Purchase Agreement attached as Exhibit 3 to the Bid Procedures Order and the proposed order to approve the sale by the Court;

e) it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Purchase Agreement;

f)  it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides for the Qualified Bidder to pay related cure costs;

g)  it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases;

h)  it includes an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

i)  it includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement;

j)  it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, payable to the order of the Debtor (or such other party as the Debtor may determine) in an amount equal to 10% of the Purchase Price;

k)  it contains such other information reasonably requested by the Debtor; and

l)  it is received prior to the Bid Deadline.

**D.    Bid Deadline**

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) counsel to the Debtor: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Kim Newmarch, Esq. (kim.newmarch@dlapiper.com) and (ii) the Office of the United States Trustee: US Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Fax: 302-573-6497) (Attn: Mark Kenney, Esq.) (mark.kenney@usdoj.gov) (collectively, the Notice Parties), so as to be received by the Debtor not later than June 2, 2014 at 9:00 a.m. (prevailing Eastern Time) (the "Bid Deadline").

E.   **Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the form of Purchase Agreement attached as Exhibit 3 to the Bid Procedures Order, and (4) any other factors deemed relevant by the Debtor in its reasonable discretion.

F.   **Only One Qualified Bid**

If the Debtor receives only one Qualified Bid, the Debtor will not hold the Auction and the Qualified Bidder submitting such Qualified Bid will be named the Successful Bidder on the Bid Deadline.

G.   **Auction Process.**

If the Debtor receives two or more Qualified Bids, the Debtor will conduct the Auction of the Purchased Assets, which shall be transcribed at June 9, 2014 at 10:00 a.m. (prevailing Pacific Time), at the offices of DLA Piper LLP (US), 550 South Hope Street, Suite 2300, Los Angeles, California 90071, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall run in accordance with the following procedures:

a)   only the Debtor, Qualified Bidders who have timely submitted a Qualified Bid, and any creditor or equity holder of the Debtor that has provided written notice to the Debtor's counsel at least five (5) business days in advance of the Auction of his, her, or its intent to attend the Auction, and their respective advisors may attend the Auction;

b)   only Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

c)   each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d)   at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (defined below) at the conclusion of the Auction.  At least one (1) business day prior to the Auction, the Debtor will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor believes in its reasonable discretion is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders;

e)   all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual

representative with authority to bind such Qualified Bidder attending the Auction in person;

f) the Debtor, after consultation with its advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction; and

g) bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $100,000 above the prior bid. After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Qualified Bidders will not have the opportunity to pass. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor will give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtor.

## H.   Selection of Successful Bid

Prior to the conclusion of the Auction, the Debtor, in consultation with its advisors, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders submitted at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder"), and communicate to the Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Debtor at the conclusion of the Auction shall be final, subject only to approval by the Court.

Unless otherwise agreed to by the Debtor and the Successful Bidder, within two (2) business days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Within one (1) business day following the adjournment of the Auction, the Debtor shall file a notice identifying the Successful Bidder with the Court and shall serve such notice by fax, email or overnight mail to all counterparties whose contracts are to be assumed and assigned.

The Debtor will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Court at the Sale Hearing.

## I.   Return of Deposits

All deposits shall be returned to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

J.    **Back-Up Bidder**

If an Auction is conducted, the Qualified Bidder or Qualified Bidders with the next highest or otherwise best Qualified Bid to the Successful Bidder, as determined by the Debtor in the exercise of its business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until sixteen (16) business days after entry of the Sale Order. Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

III.    **Sale Hearing**

The Debtor will seek entry of an order from the Court at the Sale Hearing to begin on or before [June 19, 2014], to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures.

## Exhibit 2

### (Significant Dates)

- **Assumption Objection Deadline:**   **June 2, 2014 at 4:00 p.m. (Eastern Time)**

- **Bid Deadline:**   **June 2, 2014 at 9:00 a.m. (Eastern Time)**

- **Auction:**   **June 9, 2014 at 10:00 a.m. (Pacific Time)**

- **Sale Objection Deadline:**   **[June ___, 2014] at 4:00 p.m. (Eastern Time)**

- **Sale Hearing:**   **[June ___, 2014] at ___:00 a.m. (Eastern Time)**

## Exhibit 3

**(Purchase Agreement)**

# ASSET PURCHASE AGREEMENT

### Dated as of [Date]

### By and Between

### [NAME OF PURCHASER]

### as Purchaser,

### and

### QUANTASON, LLC

### as Seller.

TABLE OF CONTENTS

ARTICLE I       PURCHASE AND SALE OF THE PURCHASED ASSETS;
ASSUMPTION OF ASSUMED LIABILITIES ........................................................1

1.1    Purchase and Sale of the Purchased Assets.......................................................1

1.2    Excluded Assets ...............................................................................................3

1.3    Assumption of Liabilities ..................................................................................4

1.4    Excluded Liabilities ..........................................................................................4

1.5    Post Closing Liabilities .....................................................................................5

1.6    Assumption/Rejection of Certain Contracts.......................................................5

1.7    Disclaimer .......................................................................................................5

ARTICLE II      CONSIDERATION; PAYMENT; ADJUSTMENT ............................5

2.1    Consideration; Payment ....................................................................................6

2.2    Deposit ............................................................................................................6

ARTICLE III     CLOSING AND TERMINATION.....................................................6

3.1    Closing ............................................................................................................6

3.2    Closing Deliveries by the Seller........................................................................6

3.3    Closing Deliveries by Purchaser .......................................................................7

3.4    Termination of Agreement ................................................................................7

3.5    Effect of Termination .......................................................................................9

ARTICLE IV     REPRESENTATIONS AND WARRANTIES OF THE SELLER ............9

4.1    Organization and Qualification .........................................................................9

4.2    Authorization of Agreement..............................................................................9

4.3    Conflicts; Consents; Compliance with Law .......................................................9

4.4    Intellectual Property .......................................................................................10

4.5    Brokers and Finders .......................................................................................11

4.6    Title to Purchased Assets; Sufficiency and Condition of Assets ........................11

4.7    Real Property..................................................................................................11

4.8    Tax Returns; Taxes ........................................................................................11

4.9    Employees; Seller Benefit Plans .....................................................................11

4.10    Permits...........................................................................................................12

4.11    Litigation .......................................................................................................12

4.12    Contracts .......................................................................................................12

ARTICLE V      REPRESENTATIONS AND WARRANTIES OF PURCHASER............12

5.1    Organization and Qualification .......................................................................12

5.2    Authority .......................................................................................................12

| | | | |
|---|---|---|---|
| 5.3 | Conflicts; Consents | .................................................................... | 13 |
| 5.4 | Financing | ............................................................................... | 13 |
| 5.5 | Brokers | ................................................................................. | 13 |
| 5.6 | Adequate Assurances Regarding Assigned Contracts | ............... | 13 |
| ARTICLE VI | BANKRUPTCY COURT MATTERS | ...................... | 13 |
| 6.1 | Competing Bid and Other Matters | ........................................... | 14 |
| 6.2 | Sale Order | ............................................................................. | 14 |
| ARTICLE VII | COVENANTS AND AGREEMENTS | ........................... | 14 |
| 7.1 | Conduct of Business of Seller | ................................................. | 14 |
| 7.2 | Assignability of Certain Contracts | .......................................... | 15 |
| 7.3 | Rejected Contracts | ................................................................ | 15 |
| 7.4 | Reasonable Efforts; Cooperation | ............................................ | 15 |
| 7.5 | Further Assurances | ................................................................ | 16 |
| 7.6 | Notification of Certain Matters | ............................................... | 16 |
| 7.7 | Litigation Support | ................................................................. | 16 |
| 7.8 | Transition | .............................................................................. | 17 |
| 7.9 | Payment of Transaction Taxes and Fees; Periodic Taxes | ......... | 17 |
| 7.10 | Confidentiality | ...................................................................... | 17 |
| 7.11 | Post-Closing Consents | ........................................................... | 18 |
| 7.12 | Disclosure Updates | ................................................................ | 18 |
| ARTICLE VIII | CONDITIONS TO CLOSING | ................................... | 19 |
| 8.1 | Conditions Precedent to the Obligations of Purchaser and the Seller | ............... | 19 |
| 8.2 | Conditions Precedent to the Obligations of the Seller | ............... | 19 |
| 8.3 | Conditions Precedent to the Obligations of Purchaser | ............. | 20 |
| ARTICLE IX | DEFINITIONS | ..................................................... | 20 |
| 9.1 | Definitions | ............................................................................ | 20 |
| ARTICLE X | ALLOCATION OF PURCHASE PRICE | ...................... | 27 |
| 10.1 | Allocation of Purchase Price | .................................................. | 27 |
| ARTICLE XI | MISCELLANEOUS | ................................................. | 27 |
| 11.1 | Payment of Expenses | ............................................................. | 27 |
| 11.2 | Survival of Covenants | ........................................................... | 27 |
| 11.3 | Entire Agreement; Amendments and Waivers | ........................... | 27 |
| 11.4 | Execution of Agreement; Counterparts; Electronic Signatures | ....................... | 27 |
| 11.5 | Governing Law | ...................................................................... | 28 |
| 11.6 | Jurisdiction, Waiver of Jury Trial | .......................................... | 28 |

WEST\247704265.8

11.7    Notices.........................................................................................................28

11.8    Binding Effect; Assignment.......................................................................29

11.9    Severability ...............................................................................................29

11.10   Bulk Sales Laws.......................................................................................29

WEST\247704265.8

## INDEX OF EXHIBITS

EXHIBIT A          FORM OF BILL OF SALE

EXHIBIT B          FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

EXHIBIT C          FORM OF ASSUMPTION AND ASSIGNMENT OF LEASES

EXHIBIT D          FORM OF IP ASSIGNMENT AND ASSUMPTION AGREEMENT

EXHIBIT E          BIDDING PROCEDURES ORDER

EXHIBIT F          FORM OF SALE ORDER

# Asset Purchase Agreement

This Asset Purchase Agreement (this "**Agreement**"), dated as of [Agreement Date] (the "**Agreement Date**"), by and between [Name of Purchaser], a [Jurisdiction and Type of Business Organization] ("**Purchaser**"), and Quantason, LLC, a Delaware limited liability company (the "**Seller**"). Purchaser and the Seller are collectively referred to herein as the "**Parties**" and individually as a "**Party.**" For purposes of this Agreement, capitalized terms used in herein shall have the meanings set forth in Article IX.

## Recitals

Whereas, on April 23, 2014 the Seller filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), commencing a chapter 11 case (the "**Bankruptcy Case**");

Whereas, the Seller continues to manage its properties and operate its businesses as a "debtor-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code;

Whereas, the Seller wishes to sell all or substantially all of the assets related to its business (the "**Business**"), including, but not limited to, all assets, Documents[1], Intellectual Property, and license agreements related to its proprietary Image-based Dynamic Ultrasound Spectrography technology;

Whereas, Purchaser desires to purchase the Purchased Assets and assume the Assumed Liabilities from the Seller and the Seller desires to sell, convey, assign and transfer to Purchaser the Purchased Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 105, 363 and 365 and other applicable provisions of the Bankruptcy Code; and

Whereas, the Purchased Assets and Assumed Liabilities shall be purchased and assumed by Purchaser pursuant to the Sale Order approving such sale, free and clear of all Claims and Encumbrances (other than Permitted Encumbrances), pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, which order will include the authorization for the assumption by the Seller and assignment to Purchaser of the Assigned Contracts and the liabilities thereunder in accordance with Section 365 of the Bankruptcy Code, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

Now, therefore, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Purchaser and the Seller hereby agree as follows:

## ARTICLE I

### PURCHASE AND SALE OF THE PURCHASED ASSETS;
### ASSUMPTION OF ASSUMED LIABILITIES

---

[1] All capitalized terms shall have the meanings set forth in **Section 9.1** of this Agreement, unless otherwise specified in this Agreement.

1.1     <u>Purchase and Sale of the Purchased Assets</u>.  Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and on the terms and subject to the conditions set forth herein, at the Closing the Seller shall sell, transfer, assign, convey and deliver to Purchaser, and Purchaser shall purchase, acquire and accept from the Seller all of the Seller's right, title and interest in, to and under the Purchased Assets, free and clear of all Claims and Encumbrances (other than Permitted Encumbrances).  Upon providing notice to the Seller, Purchaser may assign its rights to purchase any of the Purchased Assets or assume any of the Assumed Liabilities to any Affiliate of Purchaser, but such assignment shall in no manner reduce or otherwise affect Purchaser's obligations under this Agreement or any Ancillary Document.  As used herein, the term "*Purchased Assets*" shall mean, to the extent used in or related to the Business, all of the properties, assets and rights, tangible and intangible, real or personal, of the Seller of whatever kind and nature including, without limitation, the following (but excluding the Excluded Assets):

(a)     to the extent assignable pursuant to Section 365 of the Bankruptcy Code, all Contracts relating to the Business, including those listed on **Schedule 1.1(a)**, other than such Contracts that are Retained Contracts (collectively, the "*Assigned Contracts*");

(b)     all Documents used in or relating to the Business or in respect of the Purchased Assets or Assumed Liabilities;

(c)     the Leased Real Property listed on **Schedule 1.1(c)** (the "*Assumed Leased Real Property*");

(d)     all tangible assets of the Seller relating to the Business (the "*Tangible Assets*"), including equipment, tools, appliances, furniture, supplies, office supplies, office equipment, fixtures, information technology related hardware and equipment (including computers, servers, storage devices, telecommunications facilities and printers), telephone systems, telecopiers and photocopiers and other tangible personal property of every kind and description (i) that are either (a) listed in **Schedule 1.1(d)** or (b) located at any Assumed Leased Real Property;

(e)     all products of the Business, including products under development (the "*Products*");

(f)     all Permits and all pending applications therefor;

(g)     all express or implied guarantees, warranties, representations, covenants, indemnities, rights, claims, counterclaims, defenses, credits, causes of action or rights of set off against third parties relating to the Purchased Assets (including, for the avoidance of doubt, those arising under, or otherwise relating to, the Assigned Contracts) or Assumed Liabilities, including rights under vendors' and manufacturers' warranties, indemnities and guaranties;

(h)     Licenses to use the Licensed Intellectual Property;

(i)     all goodwill payment intangibles and general intangible assets and rights of the Seller to the extent associated with the Business;

(j)     all prepaid expenses, including advance payments of the Seller with respect to the Business and all rights of the Seller to receive discounts, refunds, reimbursements, rebates, awards and other similar benefits, in each case, with respect to the Business;

(k)     all Indebtedness to the extent associated with the Business payable to the Seller;

2

(l)     all proceeds and products of any and all of the foregoing Purchased Assets;

(m)    the Owned Intellectual Property; and

(n)    all other or additional assets, properties, privileges, rights (including prepaid expenses) and interests of the Seller related to the Business of every kind and description and wherever located, whether known or unknown, fixed or unfixed, accrued, absolute, contingent or otherwise, and whether or not specifically referred to in this Agreement.

1.2    Excluded Assets. Notwithstanding anything to the contrary in this Agreement, in no event shall the Seller be deemed to sell, transfer, assign or convey, and the Seller shall retain all right, title and interest to, in and under only the following assets, properties, interests and rights of the Seller (collectively, the "*Excluded Assets*"):

(a)    all Retained Contracts as set forth on **Schedule 1.2(a)**;

(b)    all rights of Seller to Claims for refunds that do not constitute a Purchased Asset hereunder;

(c)    any and all information not relating to the Business that is stored on any of the Seller's computer systems, data networks or servers;

(d)    all personnel files for Seller Employees;

(e)    all Documents (i) to the extent they relate solely to any of the Excluded Assets or Excluded Liabilities, or (ii) that any Seller is required by Law to retain and is prohibited by Law from providing a copy thereof to Purchaser;

(f)    all shares of capital stock or other equity interests of the Seller or securities convertible into, exchangeable or exercisable for any such shares of capital stock or other equity interests;

(g)    all preference or avoidance claims and actions of the Seller arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code;

(h)    all Claims that the Seller may have against any Person solely with respect to any other Excluded Assets or that relate to any Liability other than the Assumed Liabilities;

(i)    all commercial off-the-shelf Software loaded on desktop or laptop computers that are not part of the Tangible Assets;

(j)    the Seller's financial accounting books and records, corporate charter, minute and stock record books, income tax returns, corporate seal, checkbooks and canceled checks;

(k)    the Seller's rights under this Agreement, the Purchase Price hereunder, any agreement, certificate, instrument or other document executed and delivered by the Seller or Purchaser in connection with the transactions contemplated hereby, or any side agreement between the Seller and Purchaser entered into on or after the Agreement Date; and

(l)    all rights (including any claims, rights and interest in and to any refunds for Taxes with respect to the Purchased Assets and Business for Pre-Closing Tax Periods) relating to the Excluded Liabilities.

3

1.3    Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement and the Sale Order, effective as of the Closing, Purchaser shall assume from the Seller (and thereafter pay, perform, discharge or otherwise satisfy in accordance with their respective terms), and the Seller shall irrevocably convey, transfer and assign to Purchaser, the following Liabilities (collectively, the "*Assumed Liabilities*"):

(a)    all Liabilities and obligations under the Assigned Contracts (other than those which are not assignable under Section 365 of the Bankruptcy Code or as to which Consent is required to be obtained from any Person in order to permit the sale or transfer of the Assigned Contract and such consent has not been obtained) arising out of the conduct of the Business from and after the Closing Date;

(b)    all Cure Costs;

(c)    any Liabilities arising out of the conduct of the Business or the ownership of the Purchased Assets, in each case, from and after the Closing Date;

(d)    all Taxes related to the operation of the Business by Purchaser attributable to periods or portions thereof beginning on or after the Closing Date, including, without limitation, Liabilities for Taxes attributable to the ownership of the Purchased Assets from and after the Closing Date;

(e)    all Liabilities relating to amounts required to be paid by Purchaser under this Agreement; and

(f)    cost and expenses associated with removal, storage, transportation, and related taxes of acquired Business tangible assets.

1.4    Excluded Liabilities.  Notwithstanding any provision in this Agreement to the contrary, Purchaser is assuming only the Assumed Liabilities and is not assuming, and shall not be deemed to have assumed, any Liabilities of the Seller of whatever nature (whether arising prior to, at the time of, or subsequent to Closing), and the Seller shall be solely and exclusively liable for any and all such Liabilities, including those relating to, arising out of or in connection with the operation of the Business or the Purchased Assets (including the use and ownership thereof) at any time prior to the Closing Date, and those Liabilities set forth below (collectively, the "*Excluded Liabilities*"):

(a)    all Liabilities of the Seller relating to or otherwise arising, whether before, on or after the Closing, out of, or in connection with, any of the Excluded Assets;

(b)    any and all Liabilities of the Seller in respect of Contracts that are Retained Contracts;

(c)    any Liabilities under any Assigned Contract that relate to a breach of or default under, or any non-compliance with Laws with respect to, any such Assigned Contract that occurred on or prior to the Closing Date;

(d)    any Liabilities for wages, bonuses, retention bonuses or payments, employee benefits, accrued vacation, or other accrued or vested paid time off, assessments, severance or other employment compensation for any employees, or employer Taxes, including without limitation, any arising from the vesting of any equity grants upon the closing of the transactions contemplated hereby, or unpaid amounts to any consultants of the Seller, accrued or arising prior to the Closing;

4

(e)      any and all Liabilities for Taxes attributable to the operation of the Business on or prior to the Closing Date and any and all Liabilities (whether direct or as a result of successor liability, transferee liability, joint and several liability or contractual liability) for Taxes that are unrelated to the Purchased Assets; and

(f)      any costs and expenses incurred by the Seller incident to the negotiation and preparation of this Agreement and the transactions contemplated hereby and any Liability of the Seller to pay any fees or commissions to any broker, finder or agent with respect to the transactions contemplated hereby.

1.5      Post Closing Liabilities.  Purchaser acknowledges that Purchaser shall be responsible for all Liabilities and obligations relating to Purchaser's ownership or use of, or right to use, the Purchased Assets and the Assumed Liabilities after the Closing Date, including without limitation all Taxes arising out of or related to the Purchased Assets or the operation or conduct of the Business acquired pursuant to this Agreement for all Tax periods beginning on or after the Closing Date.

1.6      Assumption/Rejection of Certain Contracts.  As of the Closing, the Seller shall assume pursuant to Section 365(a) of the Bankruptcy Code and sell and assign to Purchaser pursuant to Sections 363(b), (f) and (m) and Section 365(f) of the Bankruptcy Code each of the Assigned Contracts.  Purchaser shall assume and thereafter pay, fully satisfy, discharge and perform all of the obligations under the Assigned Contracts in accordance with the terms of such Assigned Contracts and pursuant to Section 365 of the Bankruptcy Code.  Purchaser shall pay all Cure Costs associated with the Assigned Contracts.  The Seller shall reject all contracts other than the Assigned Contracts and Purchaser shall have no liability relating to any such rejected contract.

1.7      Disclaimer.  PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ARTICLE IV AND OTHERWISE IN THIS AGREEMENT, THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PURCHASED ASSETS.  WITHOUT LIMITING THE FOREGOING, THE SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PURCHASED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE PURCHASED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PURCHASED ASSETS AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE PURCHASED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.

ARTICLE II

CONSIDERATION; PAYMENT; ADJUSTMENT

2.1      Consideration; Payment.  The aggregate consideration (collectively, the "**Purchase Price**") to be paid for the purchase of the Purchased Assets, and subject to adjustment in accordance with **Section 2.2** below, shall be:  (i) the assumption of the Assumed Liabilities and (ii) a cash payment of _____(the "**Cash Payment**").

2.2    _Deposit_.  Purchaser shall make an earnest money deposit (the "**_Deposit_**") in the amount of 10% of the Cash Payment to DLA Piper LLP (US), counsel to Seller, within three (3) Business Days of the Agreement Date.  The Deposit shall be applied against payment of the Purchase Price on the Closing Date.  If this Agreement shall be terminated pursuant to **Sections 3.4(a), (b), (c), (d), (e), (f), (g), (i), (j), or (k)** hereof, or in the event that a party other than Purchaser or an Affiliate of Purchaser purchases all or a significant portion of the Purchased Assets, then the Seller shall return the Deposit to Purchaser in conformance with the terms of the Bidding Procedures Order.  If this Agreement shall be terminated by the Seller pursuant to **Sections 3.4(h)** or **(l)** hereof, then the Seller shall retain the Deposit.  The Parties agree that the Seller's right to retain the Deposit, as set forth herein, is not a penalty, but rather is liquidated damages in a reasonable amount that will compensate the Seller for its respective efforts and resources expended and the opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the transactions contemplated hereby, which amount would otherwise be impossible to calculate with precision.

ARTICLE III

CLOSING AND TERMINATION

3.1    _Closing_.  Subject to the satisfaction or waiver by the appropriate party of the conditions set forth in **Article VIII**, the closing of the purchase and sale of the Purchased Assets, the delivery of the Purchase Price, the assumption of the Assumed Liabilities and the consummation of the other transactions contemplated by this Agreement (the "**_Closing_**") shall occur as soon as practicable following the satisfaction or waiver of all conditions set forth in this Agreement (other than those conditions that by their terms are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions).  The Closing shall take place at the offices of DLA Piper LLP (US), 550 South Hope Street, Suite 2300, Los Angeles, California 90071 or at such other place as the Parties may agree.  Unless otherwise agreed by the Parties in writing, the Closing shall be deemed effective and all right, title and interest of the Seller in the Purchased Assets to be acquired by Purchaser hereunder shall be deemed to have passed to Purchaser and the assumption of all of the Assumed Liabilities shall be deemed to have occurred as of 12:01 a.m. Eastern Time on the Closing Date.

3.2    _Closing Deliveries by the Seller_.  At or prior to the Closing, the Seller shall deliver to Purchaser:

(a)    a bill of sale substantially in the form of **Exhibit A** duly executed by the Seller;

(b)    an assignment and assumption agreement substantially in the form of **Exhibit B** (the "**_Assignment and Assumption Agreement_**") duly executed by the Seller;

(c)    a copy of the Sale Order that has been entered by the Bankruptcy Court and is a Final Order;

(d)    copies of all instruments, certificates, documents and other filings (if applicable) necessary to release the Purchased Assets from all Encumbrances, including any applicable UCC termination statements, all in a form reasonably satisfactory to Purchaser;

(e)    reasonable evidence of each of the consents to assignment of the Assigned Contracts set forth in **Schedule 3.2(e)**;

(f)    an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of the Seller certifying that the conditions set forth in **Section 8.3** have been satisfied;

6

(g)     instrument of assumption and assignment of the Assumed Leases substantially in the form of **Exhibit C**, duly executed by the Seller, in form for recordation with the appropriate public land records, if necessary;

(h)     an Intellectual Property assignment and assumption agreement substantially in the form of **Exhibit D**, executed by the Seller; and

(i)     all other certificates, agreements and other documents required by this Agreement (or as Purchaser may reasonably request) to be delivered by the Seller at or prior to the Closing in connection with the transactions contemplated by this Agreement.

3.3     <u>Closing Deliveries by Purchaser</u>.  At the Closing, Purchaser shall deliver to (or at the direction of) the Seller:

(a)     the Purchase Price, in the form of the Closing Date Payment;

(b)     the Assignment and Assumption Agreement duly executed by Purchaser;

(c)     the Intellectual Property Assignment and Assumption Agreement, executed by Purchaser;

(d)     an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of Purchaser certifying that the conditions set forth in **Sections 8.2(a)** and **8.2(b)** have been satisfied; and

(e)     all other certificates, agreements and other documents required by this Agreement (or as the Seller may reasonably request) to be delivered by Purchaser at or prior to the Closing in connection with the transactions contemplated by this Agreement.

3.4     <u>Termination of Agreement</u>.  This Agreement may be terminated only in accordance with this **Section 3.4**.  This Agreement may be terminated at any time prior to the Closing, as follows:

(a)     by the mutual written consent of the Seller and Purchaser;

(b)     by written notice of either the Seller or Purchaser, if the Closing shall not have been consummated prior to _____ (the "***Outside Date***"); <u>provided</u>, <u>however</u>, that the Outside Date may be extended by the mutual written consent of the Seller and Purchaser, for a period up to thirty (30) days to the extent that all conditions to Closing set forth in this Agreement are capable of being satisfied as of such time; <u>provided further</u>, <u>however</u>, that a Party shall not be permitted to terminate this Agreement pursuant to this **Section 3.4(b)** if such Party is in material breach of this Agreement;

(c)     by written notice from Purchaser to the Seller, if the Bankruptcy Case is dismissed or converted to a case or cases under Chapter 7 of the Bankruptcy Code, or if a trustee or examiner with expanded powers to operate or manage the financial affairs, the Business or the reorganization of the Seller is appointed in the Bankruptcy Case;

(d)     by written notice from Purchaser to the Seller, if (i) the Sale Order shall not have been approved by the Bankruptcy Court by the close of business on the day that is thirty (30) days after the Agreement Date or (ii) following its entry, the Sale Order shall fail to be in full force and effect or shall have been stayed, reversed, modified or amended in any respect without the prior written consent of Purchaser, <u>provided</u>, <u>however</u>, that the right to terminate this Agreement under this **Section 3.4(d)** shall

7

not be available to Purchaser if Purchaser's failure to fulfill any covenant or obligation under this Agreement has been the cause of, or resulted in, the failure of such order to meet these requirements on or before such date;

     (e)    automatically if (i) the Sale Order shall not have been approved by the Bankruptcy Court by the close of business on the Outside Date or (ii) following its entry, the Sale Order shall fail to be in full force and effect or shall have been stayed, reversed, modified or amended in any respect without the prior written consent of Purchaser and such failure shall continue through the Outside Date;

     (f)    by written notice from either the Seller or Purchaser, if the Seller has entered into but not consummated an Alternative Transaction;

     (g)    automatically upon the consummation of an Alternative Transaction;

     (h)    by written notice from the Seller to Purchaser, if Purchaser breaches or fails to perform in any respect any of its representations, warranties or covenants contained in this Agreement and such breach or failure to perform:  (i) would give rise to the failure of a condition set forth in **Article VIII**, (ii) cannot be or has not been cured within thirty (30) days following delivery of notice to Purchaser of such breach or failure to perform and (iii) has not been waived by the Seller provided, however, that the Seller shall not be permitted to terminate this Agreement pursuant to this **Section 3.4(h)** if the Seller is then in material breach of the terms of this Agreement;

     (i)    by written notice from Purchaser to the Seller, if the Seller breaches or fails to perform in any respect any of its representations, warranties or covenants contained in this Agreement and such breach or failure to perform:  (i) would give rise to the failure of a condition set forth in **Article VIII**, (ii) cannot be or has not been cured within thirty (30) days following delivery of notice to the Seller of such breach or failure to perform and (iii) has not been waived by Purchaser; provided, however, that Purchaser shall not be permitted to terminate this Agreement pursuant to this **Section 3.4(i)** if Purchaser is then in material breach of the terms of this Agreement;

     (j)    by written notice from Purchaser to the Seller, if there shall have occurred a Material Adverse Effect since the date of this Agreement that shall be continuing;

     (k)    by written notice of either the Seller or Purchaser, if a court of competent jurisdiction or Governmental Body shall have issued an order, decree or ruling or taken any other action, in each case having the effect of restraining, enjoining or otherwise prohibiting the transactions contemplated hereby; or

     (l)    by written notice from the Seller to Purchaser, if all of the conditions set forth in **Sections 8.1** and **8.3** have been satisfied (other than conditions that by their nature are to be satisfied at the Closing) or waived and Purchaser fails to deliver the Purchase Price at the Closing, which is held no earlier than three (3) Business Days following notice from the Seller of satisfaction of all conditions set forth in **Section 8.1 and 8.3**.

     3.5    <u>Effect of Termination</u>.  In the event of termination of this Agreement pursuant to **Section 3.4**, this Agreement shall forthwith become void and there shall be no liability on the part of any Party or any of its partners, officers, directors or shareholders; provided, however, that (a) this **Section 3.5**, **Section 2.2**, **Article XI** (Miscellaneous), and the Bidding Procedures Order shall survive any such termination.

8

ARTICLE IV

REPRESENTATIONS AND WARRANTIES OF THE SELLER

Subject to the exceptions noted in the schedules delivered by the Seller concurrently herewith, the Seller represents and warrants to Purchaser as follows as of the date hereof and as of the Closing Date:

4.1     Organization and Qualification.  The Seller is a company duly organized, validly existing and in good standing under the Laws of the jurisdiction of organization.  The Seller has all requisite power and authority to own, lease and operate its properties and to carry on its business (including the Business) as it is now being conducted, subject to the provisions of the Bankruptcy Code.  The Seller has previously delivered to Purchaser complete and correct copies of its Organizational Documents, as amended and in effect on the Agreement Date. The Seller has no Subsidiaries.

4.2     Authorization of Agreement.  Subject to the entry of the Sale Order, the Seller has all requisite power and authority to execute and deliver this Agreement and each of the Ancillary Documents to which it is a party, to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and each of the Ancillary Documents to which it is a party, the performance by the Seller of its obligations hereunder and thereunder and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action on the part of the Seller.  This Agreement has been, and at or prior to the Closing, each of the Ancillary Documents to which it is a party will be, duly and validly executed and delivered by the Seller and (assuming the due authorization, execution and delivery by the other Parties, and the entry of the Sale Order) this Agreement constitutes, and each Ancillary Document to which it is a party when so executed and delivered (assuming the due authorization, execution and delivery by the other parties thereto) will constitute, legal, valid and binding obligations of the Seller, enforceable against the Seller in accordance with its terms.

4.3     Conflicts; Consents; Compliance with Law.

(a)     Except (i) for the entry of the Sale Order, (ii) for filings as may be required under the HSR Act, and (iii) as set forth on **Schedule 4.3(a)**, no filing with, notice to or consent from any Person is required in connection with the execution, delivery and performance by the Seller of this Agreement or the Ancillary Documents to which it is a party, the compliance by the Seller with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby, or the taking by the Seller of any other action contemplated hereby or thereby.

(b)     The Seller is, and has at all times been, in compliance, in all material respects with all applicable Laws.  The Seller has not received any notice or other communication from any Governmental Body regarding any actual or possible material violation of, or failure to comply in any material respect with, any Law.  The Seller is not in default in any material respect of any order, writ, injunction, judgment or decree applicable to the Business or the Purchased Assets.

4.4     Intellectual Property.

(a)     The consummation of the transactions contemplated hereby will not conflict with, alter or impair any ability of Purchaser to conduct the Business as such is currently conducted, other than as is not within the Seller's Knowledge or would not reasonably be expected to result in any material liability or have any Material Adverse Effect.

9

(b)    **Schedule 4.4(b)** sets forth an accurate and complete list of all licenses, sublicenses and other agreements pursuant to which the Seller is authorized or licensed to use any third party Intellectual Property that is used in connection with the Business as currently conducted, except for so-called "shrink-wrap" or "click-wrap" license agreements relating to off-the-shelf computer software licensed in the ordinary course of business.

(c)    Except as set forth on **Schedule 4.4(c)**, the Seller has not, to the Seller's Knowledge (but without any duty of the Seller to perform patent searches), interfered with, infringed upon, misappropriated, diluted, violated or otherwise come into conflict with the Intellectual Property of any other Person or engaged in any act of unlawful use or unfair competition, and no written, or, to the Seller's Knowledge, oral, claims have been asserted by any Person alleging such interference, infringement, misappropriation, dilution, violation, conflict, act of unlawful use or act of unfair competition.

(d)    Except as set forth in **Schedule 4.4(d)**, no claims are pending or, to the Seller's Knowledge, threatened, against the Seller by any person with respect to the ownership, validity (excluding administrative actions received in the Ordinary Course of Business in connection with pending patent applications), enforceability or use in the Business of any Seller Intellectual Property.

(e)    Except as set forth on **Schedule 4.4(e)**, the Seller has not notified any Person that it believes that such Person is interfering with, infringing upon, misappropriating, diluting, violating or otherwise acting in conflict with any Seller Intellectual Property, or engaging in any act of unlawful use or unfair competition, or has done any of the foregoing and, to the Knowledge of the Seller, no Person is interfering with, infringing upon, misappropriating, diluting, violating or otherwise acting in conflict with any Seller Intellectual Property.

(f)    The Seller has used all reasonable efforts to maintain all material Intellectual Property that constitutes confidential or trade secret information in confidence in accordance with protection procedures customarily used in the industry to protect rights of like importance.

(g)    Except as set forth on **Schedule 4.4(g)**, Neither the execution and delivery of this Agreement by the Seller nor any of the licenses provided herein will result in Purchaser being obligated to pay any royalties or other amounts to any third party in excess of those payable by the Seller prior to the Closing.

4.5    Brokers and Finders.  Except as set forth on **Schedule 4.5**, no Person has acted, directly or indirectly, as a broker, finder or financial advisor for the Seller in connection with the transactions contemplated by this Agreement and Purchaser is not or will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transactions contemplated by this Agreement based upon any arrangement made by or on behalf of the Seller.

4.6    Title to Purchased Assets; Sufficiency and Condition of Assets.  The Seller has, and shall convey to Purchaser at the Closing, good, valid, transferable and marketable title to, or valid leasehold interests in, all of the Purchased Assets, free and clear of all Encumbrances, except for Permitted Encumbrances.  The Purchased Assets constitute all of the properties, assets and rights (whether real, personal or mixed and whether tangible or intangible) necessary and sufficient to permit Purchaser to conduct the Business after the Closing as presently planned to be conducted.  Each of the Purchased Assets is in good operating condition and repair, reasonable wear and tear excepted, and is capable of being used in the Ordinary Course of Business in the manner necessary to operate the Business.

10

Notwithstanding the foregoing, the representations in this **Section 4.6** do not apply to Intellectual Property, which are covered by the representations in **Section 4.4**.

4.7     Real Property. **Schedule 4.7** sets forth a true, correct and complete list of all Leased Real Property specifying the address or other information sufficient to identify all such Leased Real Property. Each lease or sublease for each Leased Real Property grants the Seller the right to use and occupy the applicable Leased Real Property, in accordance with the terms thereof.

4.8     Tax Returns; Taxes. Except as set forth in **Schedule 4.8**:

(a)     All Tax Returns required to have been filed by the Seller have been duly filed and are true, correct and complete in all material respects, and no material fact has been omitted therefrom.

(b)     All Taxes due and payable by the Seller (whether or not shown on any Tax Return) have been paid in full or are accrued as Liabilities for Taxes on the books and records of the Seller.

(c)     The Seller has withheld and paid all Taxes required to have been withheld and paid by it to the appropriate Government Body in connection with amounts paid or owing to any employee, independent contractor, creditor or shareholder thereof or other third party.

4.9     Employees; Seller Benefit Plans.

(a)     The Seller is in compliance in all material respects with all Laws relating to the employment or termination of employment of the Employees.

(b)     There are no material Actions pending or, to the Knowledge of the Seller, threatened, against the Seller by any Seller Employee.

4.10     Permits. The Seller is in compliance in all material respects with each Permit related to the Business. Purchaser has been provided with access to complete copies of all Permits.

4.11     Litigation. Except for the Bankruptcy Case, the Seller is not a party to or bound by any Order (or any agreement entered into in any administrative, judicial or arbitration proceeding with any Third Party or governmental or other authority) with respect to the Purchased Assets or the Business. **Schedule 4.11** contains a complete and accurate list of each action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator, (i) against the Seller or any of the Seller's directors, officers or stockholders that is related to the Business, (ii) with respect to or affecting (a) the Purchased Assets or Assumed Liabilities or (b) the operations, assets, business or financial condition of the Business, or (iii) related to the consummation of the transactions contemplated hereby.  No notice, citation, inquiry or complaint is pending against or, to the Knowledge of the Seller, threatened against the Seller alleging any violation of or material Liability under any Environmental Law or Environmental Permit with respect to the Business.

4.12     Contracts

(a)     Schedules 1.1(a) and 1.2(a) set forth a complete list of all material contracts;

11

(b)     the Seller is not in material breach of or default under any Assigned Contract, and no event has occurred that with the passage of time or giving of notice or both would constitute such a breach or default, result in a loss of material rights, result in the payment of any damages or penalties or result in the creation of an Encumbrance thereunder or pursuant thereto;

(c)     the Seller has not received any written notice or, to the Knowledge of the Seller, other communication, in each case, regarding any actual, alleged, or potential violation or breach of, or default under, any of the Assigned Contracts; and

(d)     to the Knowledge of the Seller, there are no pending renegotiations of any of the Assumed Contracts and the Seller has not received written notice from any Person party to any Assigned Contract regarding the termination, cancellation, or material change to the terms of, any such Assigned Contract.

ARTICLE V

REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to the Seller as follows as of the date hereof and as of the Closing Date:

5.1     Organization and Qualification.  Purchaser is duly organized, validly existing and in good standing under the Laws of its jurisdiction of organization.  Purchaser has all requisite power and authority to own, lease and operate its properties and to carry on its business as it is now being conducted, except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Purchaser's ability to consummate the transactions contemplated hereby.

5.2     Authority.  Purchaser has the requisite power and authority to execute and deliver this Agreement and each of the Ancillary Documents to which it is a party, to perform its obligations hereunder and thereunder, to consummate the transactions contemplated hereby and thereby and to assume and perform the Assumed Liabilities.  The execution and delivery of this Agreement by Purchaser and each of the Ancillary Documents to which it is a party, the performance by Purchaser of its obligations hereunder and thereunder, the consummation of the transactions contemplated hereby and thereby and the assumption and performance of the Assumed Liabilities have been duly and validly authorized by all necessary actions on the part of Purchaser.  This Agreement has been, and at or prior to the Closing, each of the Ancillary Documents to which it is a party will be, duly and validly executed and delivered by Purchaser.  Assuming the due authorization, execution and delivery of this Agreement and the Ancillary Documents by the Seller and subject to the effectiveness of the Sale Order, this Agreement constitutes, and each Ancillary Document to which Purchaser is a party when so executed and delivered will constitute, legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with its terms.

5.3     Conflicts; Consents.

(a)     Except as set forth on **Schedule 5.3(a)**, the execution, delivery and performance by Purchaser of this Agreement or any Ancillary Document to which it is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby and the taking by Purchaser of any other action contemplated hereby or thereby, do not and will not contravene, violate or conflict with any term or provision of its Organizational Documents.

12

(b)        Except as (i) set forth on **Schedule 5.3(b)** and (ii) for filings as may be required under the HSR Act, no consent, waiver, approval, order or authorization of, or registration, qualification, designation or filing with any Person or Governmental Body is required in connection with the execution, delivery and performance by Purchaser of this Agreement or the Ancillary Documents to which it is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby, the assumption and performance of the Assumed Liabilities or the taking by Purchaser of any other action contemplated hereby or thereby, other than such filings, notices or consents, the failure of which to make or obtain would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Purchaser's ability to perform its obligations under this Agreement and the Ancillary Documents to which it is a party, to assume and perform the Assumed Liabilities or to consummate on a timely basis the transactions contemplated hereby or thereby.

5.4     Financing. Purchaser has sufficient funds in an aggregate amount necessary to pay the Purchase Price and to perform the Assumed Liabilities and to consummate all of the other transactions contemplated by this Agreement and the Ancillary Documents to which it is a party.

5.5     Brokers. The Seller is not or will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transactions contemplated by this Agreement based upon any arrangement made by or on behalf of Purchaser or any of its Affiliates.

5.6     Adequate Assurances Regarding Assigned Contracts. As of the Closing, Purchaser will be capable of satisfying the conditions contained in Sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts.

ARTICLE VI

BANKRUPTCY COURT MATTERS

6.1     Competing Bid and Other Matters.

(a)        This Agreement and the transactions contemplated hereby are subject to the Seller's right and ability to consider higher or better competing bids with respect to the Business and a material portion of the Purchased Assets pursuant to the Bidding Procedures Order.

6.2     Sale Order. The Sale Order shall be entered by the Bankruptcy Court. The Sale Order shall, among other things, (i) approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by the Seller of this Agreement, (B) the sale of the Purchased Assets to Purchaser on the terms set forth herein free and clear of all Encumbrances (other than Encumbrances included in the Assumed Liabilities and Permitted Encumbrances), and (C) the performance by the Seller of its obligations under this Agreement; (ii) authorize and empower the Seller to assume and assign to Purchaser the Assigned Contracts; and (iii) find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code, not a successor to the Seller and grant Purchaser the protections of Section 363(m) of the Bankruptcy Code. Purchaser agrees that it will promptly take such actions as are reasonably requested by the Seller to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of (a) demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and (b) establishing adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code. In the event

13

that the Bankruptcy Court's approval of the Sale Order shall be appealed, the Seller shall use reasonable efforts to defend such appeal.

## ARTICLE VII

### COVENANTS AND AGREEMENTS

7.1    Conduct of Business of Seller.    During the Pre-Closing Period, except (a) for any limitations on operations imposed by the Bankruptcy Court or the Bankruptcy Code, (b) as required by applicable Law, (c) as otherwise expressly contemplated by this Agreement or as set forth on **Schedule 7.1** or (d) with the prior written consent of Purchaser (which consent shall not be unreasonably withheld), the Seller shall:

(i)    conduct the Business and operate and maintain the Purchased Assets in the Ordinary Course of Business;

(ii)    use its commercially reasonable efforts to preserve the goodwill of and relationships with Governmental Bodies, suppliers, vendors, lessors, licensors, licensees, contractors, agents, and others having business dealings with the Business;

(iii)    comply with all applicable Laws;

(iv)    maintain in full force and effect policies of insurance or substantially equivalent policies;

(v)    maintain the books of account and records of the Business as conducted by it in the Ordinary Course of Business and consistent with past practices;

(vi)    not mortgage, pledge or subject to any Encumbrance (other than a Permitted Encumbrance) the Business or any of the Purchased Assets;

(vii)    not sell, assign, license, transfer, convey, lease, surrender, relinquish or otherwise dispose of any of the Purchased Assets;

(viii)    not make or rescind any material Tax election or take any material Tax position (unless required by Law) or file any amended Tax Return or change its fiscal year or financial or Tax accounting methods, policies or practices, or settle any Tax Liability, except in each case as would not reasonably be expected to result in Liability to Purchaser or the Business;

(ix)    not settle or compromise any claim, Liability, Action or obligation related to or in connection with the Business, the Purchased Assets or any Assumed Liability, other than the payment, discharge or satisfaction of Liabilities in the Ordinary Course of Business, pursuant to an order of the Bankruptcy Court or as otherwise contemplated by this Agreement;

(x)    not declare any dividend, pay or set aside for payment any dividend or other distribution or make any payment to any shareholder, officer or director or any Person with whom any such shareholder, officer or director has any direct or indirect relation, other than the payment of salaries in the Ordinary Course of Business;

(xi)    cooperate with and assist Purchaser in identifying all Permits required by Purchaser to operate the Business after the Closing Date;

14

(xii)    not amend, waive, modify or consent to the termination of any Assigned Contract or Permit or amend, waive, modify or consent to the termination of rights of the Seller thereunder, or enter into any Contract that would be an Assigned Contract if entered into prior to the date hereof, other than in the Ordinary Course of Business;

(xiii)    not enter into any lease of real or personal property or any renewals thereof for the Business involving a term of more than two months; or

(xiv)    enter into an agreement to do any of the foregoing.

7.2    <u>Assignability of Certain Contracts</u>.  To the extent that the assignment to Purchaser of any Assigned Contract pursuant to this Agreement is not permitted without the consent of a third party and such restriction cannot be effectively overridden or canceled by the Sale Order or other related order of the Bankruptcy Court, then this Agreement will not be deemed to constitute an assignment of or an undertaking or attempt to assign such Contract or any right or interest therein unless and until such consent is obtained; <u>provided</u>, <u>however</u>, that the Parties will use their commercially reasonable efforts, before the Closing, to obtain all such consents.

7.3    <u>Rejected Contracts</u>.  The Seller shall not reject any Assigned Contract in any bankruptcy proceeding following the Agreement Date without the prior written consent of Purchaser.  Purchaser shall have no liability for damages relating to the rejection of such Assigned Contract.

7.4    <u>Reasonable Efforts; Cooperation</u>.

(a)    Subject to the other provisions hereof, each Party shall use its commercially reasonable efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to cause the transactions contemplated herein to be effected as soon as practicable, but in any event on or prior to the Outside Date, in accordance with the terms hereof and shall cooperate fully with each other Party and its representatives in connection with any step required to be taken as a part of its obligations hereunder.  The Seller shall cooperate with and assist Purchaser in transferring, moving, or transporting any Purchased Assets to or from the premises, which cost and expense shall be borne solely by Purchaser.

(b)    In the event that any of the Parties to this Agreement discovers a Contract related to the Business, the Purchased Assets or the Assumed Liabilities during the period from and after the Agreement Date, and such Contract (i) was unknown as of the Agreement Date, (ii) is a Contract that Purchaser wishes to assume the rights and obligations of and (iii) such Contract would not be deemed a Retained Contract by the Seller, Purchaser and the Seller shall execute, acknowledge and deliver such other instruments and take such further actions as are reasonably practicable for Purchaser to assume the rights and obligations under such Contract.

(c)    The obligations of the Seller pursuant to this **Section 7.4** shall be subject to any orders entered, or approvals or authorizations granted or required, by or under the Bankruptcy Court or the Bankruptcy Code (including in connection with the Bankruptcy Case), and each of the Seller's obligations as a debtor-in-possession to comply with any order of the Bankruptcy Court (including the Bidding Procedures Order and the Sale Order) and the Seller's duty to seek and obtain the highest or otherwise best price for the Business as required by the Bankruptcy Code.

7.5    <u>Further Assurances</u>.  Each Party shall execute and cause to be delivered to each other Party such instruments and other documents, and shall take such other actions, as such other Party may

15

reasonably request (prior to, at or after the Closing) for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.

7.6    Notification of Certain Matters.  The Seller shall give prompt notice to Purchaser, and Purchaser shall give prompt notice to the Seller, of (i) any notice or other communication from any Person alleging that the consent of such Person which is or may be required in connection with the transactions contemplated by this Agreement or the Ancillary Documents is not likely to be obtained prior to Closing, (ii) any written objection or proceeding that challenges the transactions contemplated hereby or the entry of the approval of the Bankruptcy Court and (iii) the status of matters relating to the completion of the transactions contemplated hereby, including promptly furnishing the other with copies of notices or other communications received by the Seller or Purchaser or by any of their respective Affiliates (as the case may be), from any third party and/or any Governmental Body with respect to the transactions contemplated by this Agreement.

7.7    Litigation Support.  If any Party is actively contesting or defending against any action, suit, proceeding, hearing, investigation, charge, compliant, claim or demand in connection with the transactions contemplated hereby, then, for so long as such contest or defense continues, each Party will, at the sole cost and expense of the contesting or defending Party, (a) reasonably cooperate with the contesting or defending Party and its counsel in the contest or defense and (b) make available all personnel and provide all testimony and access to its books that is necessary or reasonably requested by the contesting or defending Party in connection with such contest or defense (in all cases after reasonable notice and during normal business hours).

7.8    Transition.  After the Closing the Seller shall (a) reasonably cooperate with Purchaser in its efforts to continue and maintain for Purchaser's benefit those business relationships of the Seller existing before the Closing and related to the Business with any lessor, licensor, customer, supplier or other Person having a business relationship (following the Closing, and only for the duration of such business relationship) with the Seller before the Closing and related to the Business and (b) refer to Purchaser all inquiries relating to the Business.

7.9    Payment of Transaction Taxes and Fees; Periodic Taxes.

(a)    For purposes of this Agreement, the term "**_Transfer Charges_**" shall mean all transfer, filing, recordation, value added, goods and services, sales, use, bulk sales, excise or license taxes, stamp duties or similar fees or taxes.  Purchaser shall bear the Liability of all Transfer Charges.  The Parties shall comply with the invoicing, payment and remittance requirements under applicable law with respect to all Transfer Charges.  The Seller and Purchaser shall cooperate with each other in the provision of any information or preparation of any documentation that may be necessary or useful for obtaining any available mitigation, reduction or exemption from any Transfer Charges.

(b)    Unless the Parties mutually agree otherwise, any Tax Returns that must be filed in connection with any Transfer Charges shall be prepared by the Party required by law to file such Tax Returns.  The filing Party shall use its reasonable commercial efforts to provide the other Party the Tax Returns which it is required to file at least 10 days before such Tax Returns are due to be filed.  All such Tax Returns shall be consistent with the allocation of the Purchase Price as determined pursuant to **Section 10.1**.

(c)    The Parties agree that, for sales Tax purposes, the sale of the Purchased Assets under this Agreement is an occasional sale of assets by the Seller in which the Seller does not trade in the Ordinary Course of Business. For sales Tax purposes, Purchaser and the Seller shall use the Allocation of

16

the Purchase Price for any such Purchased Assets that are subject to sales Tax as determine post-Closing pursuant to **Section 10.1** of this Agreement.

(d)     Real and personal property taxes, ad valorem taxes, and franchise fees or taxes with respect to the Purchased Assets (that are imposed on a periodic basis (collectively, "***Periodic Taxes***") shall be prorated between the Seller and Purchaser for any taxable period that includes but does not end on the Closing Date. Periodic Taxes shall be prorated between Purchaser and the Seller based on the relative periods the Purchased Assets were owned by each respective party (or its Affiliates) during the fiscal period of the taxing jurisdiction for which such taxes were imposed by such jurisdiction (as such fiscal period is or may be reflected on the bill rendered by such taxing jurisdiction). Purchaser and the Seller shall promptly forward any invoice to the other party for its reimbursable pro rata share, if any, of any Periodic Taxes.

7.10   <u>Confidentiality</u>.   This Agreement is not intended to supersede or replace the Confidentiality Agreement. The Confidentiality Agreement will survive the execution and delivery of this Agreement and remain in full force and effect in accordance with its terms, and the Seller and Purchaser will continue to be obligated to perform and comply with its obligations under the Confidentiality Agreement until the Closing. Following the Closing, the Seller shall, and shall cause its representatives, advisors and consultants to, keep confidential and not, directly or indirectly, divulge to any person or use for their own benefit, any Confidential Information included in the Purchased Assets or owned by Purchaser or its Affiliates, except for disclosures requested or required by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process, and then only in accordance with the procedure hereinafter described, or otherwise required by law. In the event that the Seller or any of its representatives, advisors or consultants (each a "***Seller Party***") is requested or required by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process to disclose any Confidential Information, such Seller Party shall notify Purchaser of the request or requirement so that Purchaser may seek an appropriate protective order or waive compliance with the provisions of this **Section 7.10**. If, in the absence of a protective order or the receipt of a waiver hereunder, such Seller Party believes in good faith, after consulting with counsel, that it is compelled to disclose any such Confidential Information to the tribunal or else stand liable for contempt, such Seller Party may disclose such Confidential Information to the tribunal; *provided, however,* that such Seller Party shall use its commercially reasonable efforts to obtain, at the request and cost of Purchaser, an Order or other assurance that confidential treatment will be accorded to such portion of such Confidential Information required to be disclosed. The prohibitions against disclosure and use of Confidential Information recited herein are in addition to, and not in lieu of, any rights or remedies that Purchaser may have available pursuant to the laws of any jurisdiction or at common law to prevent the disclosure of trade secrets or proprietary information, and the enforcement by Purchaser of its rights and remedies pursuant to this Agreement shall not be construed as a waiver of any other rights or available remedies that it may possess in law or equity absent this Agreement.

7.11   <u>Post-Closing Consents</u>.

(a)     To the extent that the sale, conveyance, transfer, assignment or delivery or attempted sale, conveyance, transfer, assignment or delivery to Purchaser of any Purchased Asset would result in a violation of any applicable Law, would require any Consent or waiver of any Governmental Body or third Person and such Consent or waiver shall not have been obtained prior to the Closing, this Agreement shall not constitute a sale, conveyance, transfer, assignment or delivery, or an attempted sale, conveyance, transfer, assignment or delivery thereof if any of the foregoing would constitute a breach of applicable Law or result in a termination of any Contract. To the extent that any consents, authorizations, approvals or acknowledgements with respect to any Purchased Asset, Permit, or Assigned Contract (each

17

a "*Consent*") have not been obtained prior to Closing, then following the Closing, the Seller and Purchaser shall use commercially reasonable efforts to promptly obtain such Consent, the cost of which (exclusive of Cure Costs) shall be borne solely by Purchaser. Pending receipt of any such Consent, the Parties shall cooperate with each other in any reasonable and lawful arrangements designed to provide to Purchaser the benefits of such Purchased Asset, Permit or Assigned Contract or to obtain such Consent. To the extent that a Consent for any such Purchased Asset, Permit or Assigned Contract cannot be obtained for Purchaser or the full benefits of use of any such Purchased Asset, Permit or Assigned Contract cannot be provided to Purchaser following the Closing, then the Parties, at Purchaser's sole cost and expense, shall endeavor to enter into such arrangements (including subleasing or contracting if permitted) to provide to Purchaser the economic (taking into account Tax costs and benefits) and operational equivalent of obtaining such Consent. Nothing in this **Section 7.11** shall limit Purchaser's obligation to pay Cure Costs pursuant to the terms of this Agreement.

(b)     Once such Consent or waiver is obtained, the Seller shall sell, assign, transfer, convey and license such Purchased Asset to Purchaser for no additional consideration.

7.12    <u>Disclosure Updates</u>. Until the Closing, the Seller will, as soon as possible after discovery deliver to Purchaser written notice (each, a "***Disclosure Schedule Update***") in the form of an amendment or supplement to the Schedules to (i) reflect any event occurring or fact, circumstance or condition arising after the date of this Agreement that, if such event occurred or such fact, circumstance or condition arose before or on the date of this Agreement would have been required to be disclosed in the Schedules or (ii) correct any existing inaccuracy or deficiency in the Schedules based on any event that occurred or fact, circumstance or condition that existed before or on the date of this Agreement. Notwithstanding the foregoing, the Seller shall not be permitted to provide a Disclosure Schedule Update within five (5) Business Days prior to the Closing Date and no material change to the Schedules contained in any Disclosure Schedule Update shall be binding and enforceable against Purchaser without Purchaser's consent.

ARTICLE VIII

Conditions to Closing

8.1     <u>Conditions Precedent to the Obligations of Purchaser and the Seller</u>. The respective obligations of each Party to this Agreement to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or to the extent permitted by Law, written waiver by each of the Seller and Purchaser) on or prior to the Closing Date, of each of the following conditions:

(a)     there shall not be in effect any order, writ, injunction, judgment or decree entered by a Governmental Body of competent jurisdiction, or any Law preventing, enjoining, restraining, making illegal or otherwise prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Documents;

(b)     the Bankruptcy Court shall have entered the Sale Order (as provided in **Article VI**) and such order shall be a Final Order and in form and substance reasonably satisfactory to Seller and Purchaser, which order shall not have been reversed, modified, amended or stayed; and

(c)     any waiting period (including any extension thereof) applicable to the purchase and sale of the Purchased Assets under the HSR Act or under the regulations of any other applicable governmental antitrust or competition authority shall have terminated or expired.

18

8.2     Conditions Precedent to the Obligations of the Seller. The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions, any of which may be waived in writing by the Seller in its sole discretion:

(a)     the representations and warranties made by Purchaser in this Agreement or in any Ancillary Document shall be true and correct in all material respects (without giving effect to any materiality or similar qualification contained therein), in each case as of the Agreement Date and as of the Closing Date, with the same force and effect as though all such representations and warranties had been made as of the Closing Date (other than representations and warranties that by their terms address matters only as of another specified date, which shall be so true and correct only as of such other specified date), except where the failure of such representations or warranties to be so true and correct has not had, and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Purchaser's ability to consummate the transactions contemplated hereby;

(b)     Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date; and

(c)     Purchaser shall have delivered, or caused to be delivered, to the Seller all of the items set forth in **Section 3.3**.

8.3     Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions, any of which may be waived in writing by Purchaser in its sole discretion:

(a)     the representations and warranties made by the Seller in this Agreement or in any Ancillary Document shall be true and correct in all material respects (provided that any such representation or warranty that is subject to any materiality, Material Adverse Effect or similar qualification shall be true and correct in all respects after giving effect to any such qualification), in each case as of the Agreement Date and as of the Closing Date, with the same force and effect as though all such representations and warranties had been made as of the Closing Date (other than representations and warranties that by their terms address matters only as of another specified date, which shall be so true and correct only as of such other specified date);

(b)     the Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by them on or prior to the Closing Date;

(c)     Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in **Section 3.2**;

(d)     Since the date of this Agreement, there has been no Material Adverse Effect;

(e)     the Seller shall have complied with the sale process deadlines set forth in the Bidding Procedures Order; and

(f)     the exclusive right of the Seller to file and solicit acceptances of a plan of reorganization shall not have been terminated.

19

ARTICLE IX

DEFINITIONS

9.1    <u>Definitions</u>.  As used herein:

(a)    "*Action*" means any action, claim, complaint, grievance, summons, suit, litigation, arbitration, mediation, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding), prosecution, contest, hearing, inquiry, inquest, audit, examination or investigation by or before any Governmental Body.

(b)    "*Affiliate*" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls or is controlled by such Person, and the term "control" (including the terms "*controlled by*" and "*under common control with*") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

(c)    "*Agreement*" shall have the meaning set forth in the preamble.

(d)    "*Agreement Date*" shall have the meaning set forth in the preamble.

(e)    "*Allocation*" shall have the meaning set forth in **Section 10.1**.

(f)    "*Alternative Transaction*" means (i) the approval by the Bankruptcy Court of a sale or sales of a material portion of the Purchased Assets to a Person other than Purchaser or (ii) the filing of a plan of reorganization that does not contemplate the sale of the Purchased Assets to Purchaser in accordance with the terms hereof.

(g)    "*Ancillary Documents*" means any certificate, agreement, document or other instrument (other than this Agreement) to be executed and delivered by a Party in connection with the consummation of the transactions contemplated this Agreement.

(h)    "*Assigned Contracts*" shall have the meaning set forth in **Section 1.1(a)**.

(i)    "*Assignment and Assumption Agreement*" shall have the meaning set forth in **Section 3.2(b)**.

(j)    "*Assumed Leased Real Property"* shall have the meaning set forth in **Section 1.1(c)**.

(k)    "*Assumed Liabilities*" shall have the meaning set forth in **Section 1.3**.

(l)    "*Bankruptcy Case*" shall have the meaning set forth in the Recitals.

(m)    "*Bankruptcy Code*" shall have the meaning set forth in the Recitals.

(n)    "*Bankruptcy Court*" shall have the meaning set forth in the Recitals.

(o)    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court.

20

(p)        "*Bidding Procedures Order*" means the order entered by the Bankruptcy Court as Docket No. ___ in the Bankruptcy Case a form of which is attached hereto as **Exhibit E**.

(q)        "*Business*" shall have the meaning set forth in the Recitals.

(r)        "*Business Day*" means any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006(a)(6).

(s)        "*Cash Payment*" shall have the meaning set forth in **Section 2.1**.

(t)        "*Claim*" has the meaning given that term in Section 101(5) of the Bankruptcy Code.

(u)        "*Closing*" shall have the meaning set forth in **Section 3.1**.

(v)        "*Closing Date*" means the date on which the Closing occurs.

(w)        "*Code*" means the United States Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, as the same may be in effect from time to time.

(x)        "*Confidentiality Agreement*" means that certain Amended and Restated Mutual Confidentiality Agreement, dated as of _____ between Purchaser and Seller.

(y)        "*Consent*" shall have the meaning set forth in **Section 7.11(a)**.

(z)        "*Contract*" means any written or oral contract, purchase order, service order, sales order, indenture, note, bond, lease, sublease, license, understanding, instrument or other agreement, arrangement or commitment that is binding upon a Person or its property, whether express or implied.

(aa)        "*Cure Costs*" means all monetary liabilities, including prepetition monetary liabilities, of the Seller that must be paid or otherwise satisfied pursuant to Section 365 of the Bankruptcy Code to cure all of the Seller's monetary defaults under the Assigned Contracts at the time of the assumption thereof and assignment to Purchaser as provided hereunder as such amounts are determined by the Bankruptcy Court.

(bb)        "*Deposit*" shall have the meaning set forth in **Section 2.2**.

(cc)        "*Disclosure Schedule Update*" shall have the meaning set forth in **Section 7.12**.

(dd)        "*Documents*" means all of the Seller's written files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, plans, operating records, safety and environmental reports, data, studies and documents, Tax Returns, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, research material, technical documentation (design specifications, engineering information, test results, maintenance schedules, functional requirements, operating instructions, logic manuals, processes, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials, in each case whether or not in electronic form relating to the Business.

21

(ee)        "*Employee*" means an individual who, as of the applicable date, is employed by the Seller in connection with the Business.

(ff)        "*Encumbrance*" means any lien (as defined in Section 101(37) of the Bankruptcy Code), encumbrance, claim (as defined in Section 101(5) of the Bankruptcy Code), right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interests, title defects, hypothecations, easements, rights of way, restrictive covenants, encroachments, rights of first refusal, preemptive rights, judgments, conditional sale or other title retention agreements and other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever.

(gg)        "*Excluded Assets*" shall have the meaning set forth in **Section 1.2**.

(hh)        "*Excluded Liabilities*" shall have the meaning set forth in **Section 1.4**.

(ii)        "*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Seller's Bankruptcy Cases or the docket of such other court, which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari,* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari* new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

(jj)        "*GAAP*" means United States generally accepted accounting principles as in effect from time to time.

(kk)        "*Governmental Body*" means any government, quasi governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state or local, or any agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrator (public or private) of applicable jurisdiction.

(ll)        "*HSR Act*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the regulations promulgated thereunder.

(mm)        "*Indebtedness*" of any Person means, without duplication, (i) the interest in respect of, principal of and premium (if any) in respect of (x) indebtedness of such Person for money borrowed and (y) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable; (ii) all obligations of such Person with respect to any Contracts relating to the deferred and unpaid purchase price of property or services, including any interest accrued thereon and prepayment or similar penalties and expenses; (iii) all obligations of such Person under leases required to be capitalized in accordance with GAAP; (iv) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction; (v) all obligations of the type referred to in clauses (i) through (iv) of any Persons for the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor, surety

22

or otherwise, including guarantees of such obligations; and (vi) all obligations of the type referred to in clauses (i) through (v) of other Persons secured by any Encumbrance (other than Permitted Encumbrances), on any property or asset of such Person (whether or not such obligation is assumed by such Person).

(nn)     "*Intellectual Property*" means all intellectual property and proprietary rights of any kind, including the following:  (i) trademarks, service marks, trade names, slogans, logos, trade dress, internet domain names, uniform resource identifiers, rights in design, brand names, and other similar designations of source or origin, together with all goodwill, registrations and applications related to the foregoing; (ii) copyrights and copyrightable subject matter (including any registration and applications for any of the foregoing); (iii) trade secrets and other confidential or proprietary business information (including manufacturing and production processes and techniques, research and development information, technology, drawings, specifications, designs, plans, proposals, technical data, financial, marketing and business data, pricing and cost information, business and marketing plans, customer and supplier lists and information), know how, proprietary processes, formulae, algorithms, models, and methodologies; (iv) computer software, computer programs, and databases (whether in source code, object code or other form); (v) all rights to sue for past, present and future infringement, misappropriation, dilution or other violation of any of the foregoing and all remedies at law or equity associated therewith; and (vi) all patents, patent applications, patent disclosures and all related re-issuances, continuations, continuations-in-part, renewals, substitutions, refiles, divisions, revisions, extensions, reexaminations and counterparts thereof, all industrial designs, industrial models and utility models, certificates of invention, industrial designs, and plant patents and design patents, as well as the rights to file for, and to claim priority to, any such patent rights.

(oo)     "*Knowledge*" or ("*Knowledge of Seller*" or "*Seller's Knowledge*") means the actual knowledge of those individual set forth in **Schedule 9.1(oo)**, in each case, including facts of which any such individual should be aware in the reasonably prudent exercise of his or her duties.

(pp)     "*Law*" means any federal, state, local, municipal, foreign or international, multinational or other law, statute, constitution, principle of common law, resolution, ordinance, code, edict, decree, rule, regulation, ruling or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any Governmental Body.

(qq)     "*Leased Real Property*" means all of the real property leased, subleased, used or occupied by the Seller, together with all buildings, structures, fixtures and improvements erected thereon, and any and all rights privileges, easements, licenses, hereditaments and other appurtenances relating thereto, and used, or held for use, in connection with the operation of the Business.

(rr)     "*Liability*" means, as to any Person, any debt, adverse claim, liability (including any liability that results from, relates to or arises out of tort or any other product liability claim), duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, direct or indirect, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed.

(ss)     "*Licensed Intellectual Property*" means any Intellectual Property that is licensed to the Seller, and used, or held for use, in connection with the Assigned Contracts.

(tt)          "*Material Adverse Effect*" means any event, change, occurrence or state of facts that has had, or is reasonably likely to have, individually or in the aggregate, a material adverse effect on the (i) assets, Liabilities, Business, properties, financial condition or results of operations of the Seller, taken as a whole, provided, however, that in no event shall any of the following, alone or in combination, be deemed to constitute, or be taken into account, in determining whether there has been, or would be, a Material Adverse Effect: (a) changes in the U.S. economy or capital markets in general but that do not have a disproportionate effect on the Seller relative to other participants in the industry in which the Seller conducts the Business, (b) changes that affect generally the industry in which the Seller operates but that do not have a disproportionate effect on the Seller relative to other participants in the industry in which the Seller conducts the Business, (c) changes after the Agreement Date in any applicable Law or GAAP, or (d) the commencement of the Bankruptcy Case.

(uu)          "*Ordinary Course of Business*" means the ordinary and usual course of normal day to day operations of the Business consistent with past practice.

(vv)          "*Organizational Documents*" means, with respect to a particular entity Person, (i) if a corporation, the articles or certificate of incorporation and bylaws, (ii) if a general partnership, the partnership agreement and any statement of partnership, (iii) if a limited partnership, the limited partnership agreement and certificate of limited partnership, (iv) if a limited liability company, the articles or certificate of organization or formation and any limited liability company or operating agreement, (v) if another type of Person, all other charters and similar documents adopted or filed in connection with the creation, formation or organization of the Person, and (vi) all amendments or supplements to any of the foregoing.

(ww)          "*Outside Date*" shall have the meaning set forth in **Section 3.4(b)**.

(xx)          "*Owned Intellectual Property*" means all Intellectual Property owned by the Seller, and used, or held for use, in connection with the operation of the Business.

(yy)          "*Parties*" and "*Party*" shall have the meanings set forth in the preamble.

(zz)          "*Periodic Taxes*" shall have the meaning set forth in **Section 7.9(d)**.

(aaa)          "*Permits*" means to the fullest extent permitted under applicable law, all notifications, licenses, permits (including environmental, construction and operation permits), franchises, certificates, approvals, consents, waivers, clearances, exemptions, classifications, registrations, variances, orders, tariffs, rate schedules and other similar documents and authorizations issued by any Governmental Body to the Seller and used, or held for use, in connection with the operation of the Business or applicable to ownership of the Purchased Assets or assumption of the Assumed Liabilities.

(bbb)          "*Permitted Encumbrances*" means (i) easements, rights of way, restrictive covenants, encroachments and similar non-monetary encumbrances or non-monetary impediments against any of the Purchased Assets which do not, individually or in the aggregate, adversely affect the operation of the Business (ii) applicable zoning Laws, building codes, land use restrictions and other similar restrictions imposed by Law, and (iii) materialmans', mechanics', artisans', shippers', warehousemans' or other similar common law or statutory liens incurred in the ordinary course of business.

(ccc)          "*Person*" means an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body or other entity or group.

24

(ddd)      "*Petition Date*" means the date on which the Seller commences the Bankruptcy Case.

(eee)      "*Pre-Closing Period*" means the period commencing on the Agreement Date and ending on the earlier of the date upon which this Agreement is terminated pursuant to **Section 3.4** or the Closing Date.

(fff)      "*Products*" shall have the meaning set forth in **Section 1.1(e)**.

(ggg)      "*Purchased Assets*" shall have the meaning set forth in **Section 1.1**.

(hhh)      "*Purchase Price*" shall have the meaning set forth in **Section 2.1**.

(iii)      "*Purchaser*" shall have the meaning set forth in the preamble.

(jjj)      "*Retained Contracts*" means any Contracts that are related to the Business and (i) listed on **Schedule 1.2(a)** or (ii) Contracts Purchaser causes the Seller to reject pursuant to **Section 1.6**.

(kkk)      "*Sale Order*" means an order substantially in the form attached hereto as **Exhibit F** and otherwise in form and substance reasonably satisfactory to the Seller and Purchaser.

(lll)      "*Seller*" shall have the meaning set forth in the preamble.

(mmm)      "*Seller Employees*" means all employees related to the Business that are employed by the Seller.

(nnn)      "*Seller Intellectual Property*" means, collectively, the Owned Intellectual Property and the Licensed Intellectual Property.

(ooo)      "*Seller Party*" shall have the meaning set forth in **Section 7.10**.

(ppp)      "*Software*" means all computer software, the tangible media on which it is recorded (in any form) and all supporting documentation, including, without limitation, input and output format, program listings, narrative descriptions, source code, object code, executable code, algorithms, logic and development tools, bug lists and tools or procedures for 'tracking and fixing bugs, operating instructions, construction and design specifications, training materials and user manuals, and data and databases, including those pertaining to the design, operation, maintenance, support, development, performance, and configuration of such software, together with all translations, adaptations, modifications, derivations, combinations and derivative works thereof.

(qqq)      "*Subsidiary*" or "*Subsidiaries*" means, with respect to any Person, any corporation, limited liability company, joint venture or partnership of which such Person (a) beneficially owns, either directly or indirectly, more than fifty percent (50%) of (i) the total combined voting power of all classes of voting securities of such entity, (ii) the total combined equity interests, or (iii) the capital or profit interests, in the case of a partnership; or (b) otherwise has the power to vote or to direct the voting of sufficient securities to elect a majority of the board of directors or similar governing body.

(rrr)      "*Tangible Assets*" shall have the meaning set forth in **Section 1.1(d)**.

25

(sss) *"Tax"* and *"Taxes"* mean any and all taxes, charges, fees, tariffs, duties, impositions, levies or other assessments, imposed by any Governmental Body, including any interest, penalties or additional amounts attributable to, or imposed upon, or with respect to, Taxes and any Liability for the Taxes of any other Person as a transferee or successor, by Law, Contract or otherwise.

(ttt) *"Tax Return"* means any return, report, information return, declaration, claim for refund or other document (including any schedule or related or supporting information) supplied or required to be supplied to any Governmental Body with respect to Taxes, including amendments thereto.

(uuu) *"Third Party"* means any Person other than any of the Parties and their respective Affiliates.

(vvv) *"Transfer Charges"* shall have the meaning set forth in **Section 7.9(a)**.

ARTICLE X

ALLOCATION OF PURCHASE PRICE.

10.1    Allocation of Purchase Price.  As soon as practicable after the Closing Date, Purchaser shall determine the allocation of the Purchase Price among the Purchased Assets and the agreements provided for herein, for all purposes (including financial, accounting and tax) (the *"Allocation"*). Purchaser and the Seller shall each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Code (or any successor form or successor provision of any future Tax Law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable Law.  The Seller shall provide Purchaser and Purchaser shall provide the Seller with a copy of any information required to be furnished to the Secretary of the Treasury under Code Section 1060.

ARTICLE XI

MISCELLANEOUS

11.1    Payment of Expenses.  Except as otherwise provided in this Agreement and whether or not the transactions contemplated hereby are consummated, the Seller and Purchaser shall bear their own expenses incurred or to be incurred in connection with the negotiation and execution of this Agreement and the Ancillary Documents and the consummation of the transactions contemplated hereby and thereby.

11.2    Survival of Covenants.  The Parties agree that the covenants contained in this Agreement to be performed at or after the Closing shall survive in accordance with the terms of the particular covenant or until fully performed.

11.3    Entire Agreement; Amendments and Waivers.  This Agreement, together with the Confidentiality Agreement and the Ancillary Documents, represents the entire understanding and agreement between the Parties with respect to the subject matter hereof.  This Agreement may be amended, supplemented or changed, and any provision hereof may be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such

26

amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party shall be deemed to constitute a waiver by the Party taking such action of compliance with any representation, warranty, condition, covenant or agreement contained herein. The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by applicable Law.

    11.4    <u>Execution of Agreement; Counterparts; Electronic Signatures</u>.

    (a)    This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument, and shall become effective when counterparts have been signed by each of the Parties and delivered to the other Parties; it being understood that all Parties need not sign the same counterparts.

    (b)    The exchange of copies of this Agreement and of signature pages by electronic mail in "portable document format" ("*.pdf*") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.

    11.5    <u>Governing Law</u>. THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH FEDERAL BANKRUPTCY LAW, TO THE EXTENT APPLICABLE, AND WHERE STATE LAW IS IMPLICATED, THE LAWS OF THE STATE OF DELAWARE SHALL GOVERN, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF (EXCEPT FOR ANY LAWS OF THAT STATE WHICH WOULD RENDER SUCH CHOICE OF LAWS INEFFECTIVE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

    11.6    <u>Jurisdiction, Waiver of Jury Trial</u>.

    (a)    THE BANKRUPTCY COURT WILL HAVE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER AT LAW OR IN EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY; <u>PROVIDED, HOWEVER</u>, THAT IF THE BANKRUPTCY COURT IS UNWILLING OR UNABLE TO HEAR ANY SUCH DISPUTE, THE COURTS OF THE STATE OF DELAWARE AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN WILMINGTON, DELAWARE WILL HAVE SOLE JURISDICTION OVER ANY AND ALL DISPUTES BETWEEN OR AMONG THE PARTIES, WHETHER AT LAW OR IN EQUITY, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED HEREBY.

    (b)    EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

    11.7    <u>Notices</u>. Unless otherwise set forth herein, any notices, consents, waivers and other communications required or permitted by this Agreement shall be in writing and shall be deemed given to

a Party when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid), or (b) sent by e-mail, in each case, if sent during the normal business hours of the recipient, with confirmation of transmission by the transmitting equipment confirmed with a copy delivered as provided in clause (a), in the case of each of clauses (a) and (b), to the following addresses or e-mail addresses and marked to the attention of the person (by name or title) designated below (or to such other address, e-mail address or person as a Party may designate by notice to the other Parties):

If to the Seller, to:       Quantason, LLC
Howard Hughes Center
6080 Center Drive, Suite 910
Los Angeles, California 90045
Attention: Edmond Rambod, CEO & President
E-mail address: ed.rambod@quantason.com

With a copy (which shall not constitute effective notice) to:

DLA Piper LLP (US)
550 South Hope Street, Suite 2300
Los Angeles, California 90071
Attention:  Kim Newmarch, Esq.
               Bertrand Pan, Esq.
E-mail address:  Kim.Newmarch@dlapiper.com
                    Bertrand.Pan@dlapiper.com

If to Purchaser, to:    [Name of Purchaser]
[Street Address of Purchaser]
Attention:  [Name of Person to Direct Attention to]

E-mail address:  [ E-mail Address]

With a copy (which shall not constitute effective notice) to:

[Name of Counsel for Purchaser]
[Street Address of Counsel for Purchaser]
Attention:  [Name of Person to Direct Attention to]
E-mail address:  [E-mail Address]

11.8    <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon Purchaser and, subject to entry of the Sale Order, the Seller, and inure to the benefit of the Parties and their respective successors and permitted assigns, including any trustee or estate representative appointed in the Bankruptcy Case or any successor Chapter 7 case.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below.  Except as provided otherwise in **Section 1.1**, no assignment of this Agreement or of any rights or obligations hereunder may be made by the Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other Parties and any attempted assignment without such required consents shall be void.

11.9    <u>Severability</u>.  Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if

28

any provision or portion of any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable Law in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or portion of any provision in such jurisdiction and in lieu of such invalid, illegal or unenforceable provision or portion of any provision, there will be added automatically as a part of this Agreement a valid legal and enforceable provision as similar in terms to such invalid, illegal or unenforceable provision as may be possible.

11.10   <u>Bulk Sales Laws</u>.   Each Party hereby waives compliance by the Parties with the "bulk sales," "bulk transfers" or similar Laws and all other similar Laws in all applicable jurisdictions in respect of the transactions contemplated by this Agreement or any Ancillary Document.   Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets shall be free and clear of any and all liens (as defined in Section 101(37) of the Bankruptcy Code), claims (as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, claims for successor liability under any theory of Law or equity), interests, or Encumbrances, in each case pursuant to Section 363(f) of the Bankruptcy Code, whether arising prior to or subsequent to the Petition Date, including any liens or claims arising out of the "bulk transfers" Laws.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

29

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized officers as of the Agreement Date.

**Quantason, LLC:**

By:_____
Name:
Title:

**[Purchaser's Name]:**

By:_____
Name:
Title:

**Exhibit 4**

**(Procedures Notice)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                        :  Chapter 11
In re                                   :
                                        :  Case No. 14-_____ (____)
Quantason, LLC                          :
                                        :
            Debtor.                     :
                                        :
-------------------------------------------------------------x
```

### NOTICE OF SALE PROCEDURES,
### AUCTION DATE AND SALE HEARING

**PLEASE TAKE NOTICE** that on [date], the above-captioned debtor and debtor in possession (the "Debtor") filed the Motion of the Debtor and Debtor in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief (the "Motion").[1]  The Debtor seeks, among other things, to sell substantially all assets (the "Purchased Assets") of the Debtor to the successful bidder (the "Successful Bidder"), at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to sections 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on _____, 2014, the Bankruptcy Court entered an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set the key dates and times related to the Sale of the Purchased Assets.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures.  To the extent that there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, an auction (the "Auction") to sell the Purchased Assets will be conducted on June 9, 2014 at 10:00 a.m. (Pacific) at the offices of DLA Piper LLP (US), 550 South Hope Street, Suite 2300,

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Los Angeles, California 90071, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Hearing") before the [judge], United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, [_]th Floor, Courtroom [_], on [**June __, 2014**] at __:00 a.m.  (prevailing Eastern Time), or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.  Objections to the Sale shall be filed and served **so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on [June __, 2014]** by: (i) counsel to the Debtor: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Kim Newmarch, Esq. (kim.newmarch@dlapiper.com)) and (ii) the Office of the United States Trustee: US Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Fax: 302-573-6497) (Attn:  Mark Kenney, Esq.) (mark.kenney@usdoj.gov) (collectively, the Notice Parties).

**PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order and Bidding Procedures, which Bidding Procedures Order shall control in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety.  Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to DLA Piper LLP (US), Attn: Lindsey Wyman, 550 South Hope Street, Suite 2300, Los Angeles, CA  90071 or by emailing lindsey.wyman@dlapiper.com.

Dated: April __, 2014        Respectfully submitted,
      Wilmington, Delaware

_____

R. Craig Martin (5032)
Daniel N. Brogan (5723)
DLA PIPER LLP (US)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@dlapiper.com
        daniel.brogan@dlapiper.com

      -and-

Kimberly D. Newmarch (DE 4340)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:   kim.newmarch@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTOR AND
DEBTOR IN POSSESSION

**Exhibit 5**

**(Cure Notice)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                    :  Chapter 11
In re                               :
                                    :  Case No. 14-_____ (____)
Quantason, LLC                      :
                                    :
        Debtor.                     :
                                    :
------------------------------------------------------------x
```

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS
AND UNEXPIRED LEASES OF THE DEBTOR
THAT MAY BE ASSUMED AND ASSIGNED**

**PLEASE TAKE NOTICE** that on [date], the above-captioned debtor and debtor in possession (the "Debtor") filed the Motion of the Debtor and Debtor in Possession Pursuant to Section 105(a), 363 and 365 of the Bankruptcy Code for an Order (I)(A) Approving Procedures in Connection with the Sale of Substantially All of the Debtor's Assets; (B) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief (the "Motion").[1]

**PLEASE TAKE FURTHER NOTICE** that, on _____, 2014, the Court entered an Order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the sale of substantially all of the assets (the "Purchased Assets") of the Debtor and (ii) procedures for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval of the sale (the "Sale") of the Purchased Assets to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to section 363 of the Bankruptcy Code, including the assumption by the Debtor and assignment to the buyer of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "Assumed Executory Contracts"). Within 24 hours after adjournment of the Auction (if any), unless otherwise agreed to by the Debtor, but in no event, at least one (1) business day prior to the Sale Hearing, the

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtor shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice by fax, email or overnight mail to all counterparties whose contracts are to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing (the "Sale Hearing") to approve the Sale and authorize the assumption and assignment of the Assumed Executory Contracts will be held on [**June __, 2014 at __:___ a.m**] (prevailing Eastern Time), before the [Judge], United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, [_]th Floor, Courtroom [_]. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtor may seek to assume an executory contract or unexpired lease to which you may be a party. The Assumed Executory Contract(s) are described on Exhibit A attached to this Notice. The amount shown on Exhibit A hereto as the "Cure Amount" is the amount, if any, based upon the Debtor's books and records, which the Debtor asserts is owed to cure any defaults existing under the Assumed Executory Contract.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Executory Contract(s) on Exhibit A to which you are a party, you must file in writing with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, an objection on or before **June 2, 2014 at 4:00 p.m. (prevailing Eastern Time)**. Any objection must set forth the specific default or defaults alleged and set forth any cure amount as alleged by you. If a contract or lease is assumed and assigned pursuant to a Court order approving same, then unless you properly file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount set forth herein, if any. Any non-debtor party to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that if you have any other objection to the Debtor's assumption and assignment of the Assumed Executory Contract to which you may be a party, you also must file that objection in writing no later than 4:00 p.m. (prevailing Eastern Time) on **June 2, 2014 at 4:00 p.m. (prevailing Eastern Time)** provided, however, that any counterparty to an Assumed Executory Contract may file and serve an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the Successful Bidder's ability to provide adequate assurance of future performance under the Assumed Executory Contract up to the time of the Sale Hearing, or raise it at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served so as to be received by the following parties by the applicable objection deadline date and time(i) counsel to the Debtor: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Kim Newmarch, Esq. (kim.newmarch@dlapiper.com)) and (ii) the Office of the United States Trustee: US Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware,

19899-0035 (Fax: 302-573-6497) (Attn: Mark Kenney, Esq.) (mark.kenney@usdoj.gov) (collectively, the <u>Notice Parties</u>).

**PLEASE TAKE FURTHER NOTICE** that the buyer shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under sections 365(b) and (f) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in connection with the proposed assignment of any Assumed Executory Contract. The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtor and the non-debtor party cannot resolve the Cure Amount, the Debtor shall segregate any disputed Cure Amounts ("<u>Disputed Cure Amounts</u>") pending the resolution of any such disputes by the Court or mutual agreement of the parties. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in the Purchase Agreement with the Successful Bidder, pursuant to section 365(k) of the Bankruptcy Code, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Assumed Executory Contracts.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtor to assume any Assumed Executory Contracts or to pay any Cure Amount.[2]

PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

ANY NON-DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSUMED EXECUTORY CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.

---

[2]    "Assumed Executory Contracts" are those Contracts and Leases that the Debtor believes may be assumed and assigned as part of the orderly transfer of the Purchased Assets; however, the Successful Bidder may choose to exclude certain of the Debtor's Contracts or Leases from the list of Assumed Executory Contracts as part of their Qualifying Bid, causing such Contracts and Leases not to be assumed by the Debtor.

Dated: _____, 2014          Respectfully submitted,
     Wilmington, Delaware

                              _____

                              R. Craig Martin (5032)
                              Daniel N. Brogan (5723)
                              DLA PIPER LLP (US)
                              1201 North Market Street, Suite 2100
                              Wilmington, Delaware 19801
                              Telephone:  (302) 468-5700
                              Facsimile:  (302) 394-2341
                              Email:  craig.martin@dlapiper.com
                                         daniel.brogan@dlapiper.com

                                 -and-

                              Kimberly D. Newmarch (DE 4340)
                              DLA PIPER LLP (US)
                              203 N. LaSalle Street, Suite 1900
                              Chicago, Illinois 60601
                              Telephone:  (312) 368-4000
                              Facsimile:  (312) 236-7516
                              Email:   kim.newmarch@dlapiper.com

                              PROPOSED ATTORNEYS FOR DEBTOR AND
                              DEBTOR IN POSSESSION

## Exhibit A

### (Assumed Executory Contracts)